# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 8:15CR343 |
| | ) |
| JERELL HAYNIE, | ) FINDINGS AND |
| GREGORY BAHATI, | ) RECOMMENDATION |
| | ) |
| Defendants. | ) |

This matter is before the court on defendant Jerell Haynie's Motion to Suppress Evidence Obtained from Email/Mail Searches (Filing No. 242) and defendant Gregory Bahati's Motion to Suppress Evidence from Search of Mail (Filing No. 216) and Motion to Suppress Evidence from Search of Recorded Jail Calls and Request for Evidentiary Hearing (Filing No. 262). A hearing on the motions was held before the undersigned magistrate judge on November 16, 2016. A transcript of the hearing was filed on November 30, 2016. (Filing No. 318). For the reasons stated below, the undersigned will recommend that the defendants' motions be denied.

## BACKGROUND

### A. Motions to Suppress Email and Mail

On April 18, 2016, Magistrate Judge Thomas Thalken issued a search warrant "authorizing the interception, inspection of, and copying of the outgoing mail for [Bahati and Haynie] at the correctional facilities where they are being held" for a period of fourteen days. The warrant excludes any mail to the defendants' attorneys of record. Special Agent Cory Shelton ("SA Shelton") of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") submitted a twelve-page affidavit with the application for the warrant, containing the following information:

1

SA Shelton has significant training and experience in the area of gangs. SA Shelton was involved with the investigation that led to the Superseding Indictment in this case against the defendants. The defendants, including Haynie and Bahati, are all members and associates of the 40th and 44th Avenue Crips street gang in Omaha, Nebraska. During his investigation, SA Shelton was advised of interviews with two confidential informants, CI #1 and CI #2, who were members of the 40th Ave. Crips. Both informants explained that the 40th and 44th Ave. Crips gangs have an unwritten rule not to cooperate or "snitch" to law enforcement. CI #2 told law enforcement that members of the 40th and 44th Ave. Crips were "out to get" him because a copy of an affidavit was posted on Facebook indicating CI #2 was cooperating with police. SA Shelton also was aware of CI #2's testimony to the grand jury in this case, wherein CI #2 described an occasion when defendant Haynie fired numerous rounds into the house of an individual in retaliation for talking to the police about Haynie.

SA Shelton was aware that on "countless" occasions, individuals with relevant information refused to talk to law enforcement due to fear of retaliation by the gangs, including a fear that the individuals' names would appear on "paperwork." "Paperwork" can mean several different things depending on the context, but frequently it includes reports produced in discovery and affidavits, such as the one described by CI #2 above. Based on SA Shelton's conversations with other law enforcement officers and his experience working gang investigations, including this case, Shelton knows that gang members frequently send out "paperwork" as proof of individuals' cooperation with law enforcement. Consistent with the 40th and 44th Ave. Crips' culture of retaliating against witnesses identified by "paperwork," co-defendant Dionte Dortch sent letters from jail aimed at recruiting help from fellow gang members to retaliate against and intimidate potential witnesses. SA Shelton was aware that a protective order in this case was denied so there was nothing to prevent defense counsel from sending copies of discovery materials to the defendants. Based on the above information, SA Shelton believed the other

defendants, including Bahati and Haynie, were following their gang's practice of tampering with and intimidating witnesses through the mail, including sending "paperwork" to others outside of the jail.

Pursuant to the above affidavit, Magistrate Judge Thalken found there was probable cause to issue the search warrant. Bahati and Haynie have filed the instant motions (Filing No. 216; Filing No. 242) seeking to suppress any evidence derived from the search of their jail mail, arguing that SA Shelton's affidavit supporting the search warrant lacked sufficient probable cause and that the warrant application was misleading. At the hearing on the motions to suppress, counsel for Bahati clarified that he did not request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

### B. Bahati's Motion to Suppress Recorded Jail Calls

Bahati is charged in Count One of the Superseding indictment with a RICO Conspiracy, in violation of 18 U.S.C. § 1962(d). The Indictment alleges that Bahati committed several overt acts in furtherance of the RICO conspiracy. (Filing No. 33 at pp. 9-10). Overt Acts 43 and 44 allege that on April 23, 2015, Bahati pointed a gun at Victim #5's head, pulled the trigger, and attempted to shoot Victim #5. An individual named "D.R." allegedly witnessed the incident referenced in Overt Acts 43 and 44. Shortly after this incident, D.R. was arrested on an unrelated matter and detained at Douglas County Jail. From the jail, D.R. placed telephone calls to Bahati, which were recorded by the jail. The government will seek to introduce at trial recorded conversations between D.R. and Bahati, wherein Bahati discussed the incident involving Victim #5.

Bahati has been an inmate at the Douglas County Jail since September 29, 2015, when he was detained pending trial in a separate federal case. See Filing No. 18 in Case No. 8:15CR182. The government will also seek to introduce at trial certain recorded telephone calls placed by Bahati from the jail telephone.

3

## DISCUSSION

### A. Motions to Suppress Email and Mail

Both Bahati and Haynie seek suppression of evidence obtained from the search of their jail mail because the affidavit supporting the search warrant lacked sufficient probable cause or individualized suspicion. See Filing No. 216; Filing No. 242.

"'[T]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). Probable cause is assessed "'from the viewpoint of a reasonably prudent police officer acting in the circumstance of the particular case.'" *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Reinholz*, 245 F.3d 765, 766 (8th Cir. 2001)). "'When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *Solomon*, 432 F.3d at 827 (internal quotations omitted) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)). "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted). An issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

Considering the totality of the circumstances, and giving due deference to the issuing magistrate judge, the undersigned finds that SA Shelton's affidavit provided probable cause to issue the search warrant. SA Shelton's affidavit, based on his personal knowledge acquired through his investigation and the investigation of other law enforcement officers, showed that Bahati and Haynie were members of the 40th Avenue

street gang, which gang has a history of retaliating and threatening witnesses that talk to law enforcement. The affidavit detailed the gang's common practice of retaliating against witnesses identified by "paperwork," which includes case discovery and affidavits. No protective order was issued so nothing would prevent defense counsel from sending copies of discovery materials to the defendants. The affidavit explained that the only way for the defendants, who were in custody, to send "paperwork" to others outside the jail would be through the mail. The affidavit showed that co-defendant and co-gang member Dortch engaged in the type of witness tampering the warrant application was targeting.

Bahati argues the warrant application was misleading because: 1) the affidavit failed to state that counsel for Bahati agreed to entry of a protective order; and 2) SA Shelton did not inform the reviewing judge that Bahati did not discuss "paperwork, witnesses, or any effort to influence or intimidate witnesses" in the mail. (Filing No. 223 at pp. 24-25). However, "A law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Schaffer v. Beringer*, 842 F.3d 585, 594 (8th Cir. 2016) (quoting *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2011)). And although Bahati appears to argue the application presents no evidence he had personally threatened or tampered with a witness, "[P]robable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity[.]" *United States v. Webster*, 625 F.3d 439, 442 (8th Cir. 2010) (quoting *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)). The information available to the issuing judge was sufficient to find probable cause to search these defendants' jail mail.

Even if probable cause did not exist to issue the warrant in this case, the undersigned finds the good faith exception to the exclusionary rule would save the evidence seized from being suppressed. An exception to the exclusionary rule applies where officers rely on a warrant in good faith. *United States v. Hessman*, 369 F.3d 1016, 1019 (8th Cir. 2004). "In the absence of an allegation that the magistrate abandoned his detached and neutral

role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 920 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *Leon*, 468 U.S. at 921).

There is no evidence that SA Shelton misled or provided false information to the Magistrate Judge or that the Magistrate Judge abandoned his role. Although Bahati argues that SA Shelton omitted the fact that defense counsel agreed to the entry of a protective order, there is no evidence of any purposeful omissions nor is there any indication that the information supplied to the Magistrate Judge was false or incorrect. Indeed, SA Shelton specifically stated, "This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter." (Filing No. 219`5 at p. 5). There has been no showing that the warrant was facially deficient. Given the quantity of information and detail in the affidavit, particularly considering that it was focused specifically on the gangs to which the defendants belong, and considering that it provided evidence of a fellow gang member actively engaged in witness tampering through the mail, the undersigned cannot say that the affidavit was so lacking in probable cause as to make belief in the warrant entirely unreasonable. Accordingly, undersigned concludes the officers reasonably relied on the affidavit and subsequent warrant in good faith. See *Leon*, 468 U.S. 897.

### B. Bahati's Motion to Suppress Recorded Jail Calls

Bahati seeks to suppress the digitally recorded telephone calls he received from D.R. while D.R. was incarcerated at the Douglas County jail, and the outgoing telephone calls Bahati made as an inmate at the Douglas County Jail. (Filing No. 262). Bahati argues he maintained a reasonable expectation of privacy in his phone calls because the

jail's monitoring and recording of his phone calls were not made in routine practice in furtherance of institutional security. (Filing No. 264 at pp. 3-4). Bahati further argues that he did not impliedly consent to the monitoring of his phone calls because the warning message he received before placing the calls was ambiguous. (Filing No. 264 at pp. 9-10).

"Before the interception of a conversation can be found to constitute a search under the Fourth Amendment . . . the individuals involved must show that they had a reasonable expectation of privacy in that conversation." *United States v. Peoples*, 250 F.3d 630, 637 (8th Cir. 2001)(citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). The Fourth Amendment protects prison inmates from unreasonable searches and seizures, but their reasonable expectation of privacy is much lower than that of most other individuals. See *Levine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008). The Eighth Circuit has held that an inmate who is aware of a jail's policy to record and/or monitor all inmate phone calls impliedly consents to such monitoring when he chooses to make a phone call. See, e.g., *United States v. Lucas*, 499 F.3d 769, 780 (8th Cir. 2007)(noting an inmate impliedly consented after the jail gave each inmate a handbook stating that all outgoing telephone calls were monitored except those to attorneys, affixed placards to the inmate telephones warning that the calls were recorded, and an audio message repeated the warning before each call); *United State v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992)(finding inmate impliedly consented to recording of his telephone conversations because "he was aware of the telephone monitoring policy. It was his choice to use the telephone to conduct his illegal business.").

In the instant case, Bahati was an inmate at the Douglas County Jail, operated by the Douglas County Department of Corrections Center ("DCDC"), at the time he placed the phone calls at issue. Likewise, Bahati received a phone call from D.R. while she was an inmate at the Douglas County Jail. At the hearing on Bahati's motion, the government introduced testimony from the phone system administrator at the DCDC explaining that every time an inmate makes an outgoing phone call, an automated system audibly warns

both parties to the phone call that the call is recorded.  The audible warning states, "This call is from a corrections facility and is subject to monitoring and recording." Additionally, signs are posted at eye level above each phone in the jail housing unit warning inmates that "calls placed from this telephone are subject to monitoring and recording."  Finally, the DCDC provides each inmate with a handbook warning inmates that all outgoing telephone calls were subject to recording, except calls to attorneys. Bahati received a copy of the handbook when he was booked into the jail.

In consideration of the above evidence, the undersigned finds that Bahati was adequately advised that telephone conversations made from the jail would be monitored and recorded.  Knowing that his conversations would be monitored and recorded, Bahati elected to use the telephone and continue with his various conversations, both in his outgoing phone calls, and in the incoming phone calls placed by D.R. from the jail.  Any reasonable person in Bahati's position should have known, before engaging in the conversation, that the conversation would be recorded.  Having impliedly consented to having his conversations recorded, the undersigned finds Bahati did not have an objectively reasonable expectation of privacy in those calls.  See *United States v. Eggleston*, 165 F.3d 624, 626 (8th Cir. 1999) ("If someone agrees that the police may listen to his conversations and may record them, all reasonable expectation of privacy is lost, and there is no legitimate reason to think that the recordings, like any other evidence lawfully discovered, would not be admissible.").  Therefore, the undersigned finds that Bahati impliedly consented to the monitoring and recording of his telephone calls, and recommends that his motion to suppress recorded jail calls be denied.  Accordingly,

**IT IS HEREBY RECOMMENDED to Senior Judge Joseph Bataillon** that defendant Jerell Haynie's Motion to Suppress Evidence Obtained from Email/Mail Searches (Filing No. 242) and defendant Gregory Bahati's Motion to Suppress Evidence from Search of Mail (Filing No. 216) and Motion to Suppress Evidence from Search of Recorded Jail Calls and Request for Evidentiary Hearing (Filing No. 262) be denied.

## ADMONITION

Pursuant to NECrimR 59.2, any party may object to a magistrate judge's order by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation.   Failure to timely object may constitute a waiver of any objection.

**DATED: January 6, 2017**

        **BY THE COURT:**

        **s/ F.A. Gossett, III**
        **United States Magistrate Judge**