# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:15CR343 |
| v. ) | |
| ) | |
| JERELL HAYNIE, ) | FINDINGS AND |
| ) | RECOMMENDATION |
| Defendant. ) | |

This matter is before the court on the Motion to Dismiss Indictment (Double Jeopardy) (Filing No. 182) and the Motion to Suppress (Filing No. 257) filed by Defendant Jerell Haynie. Hearings on the motions were held on December 7 and 20, 2016. Transcripts of the hearings were filed on December 19, 2016, and January 1, 2017. For the reasons stated below, the undersigned will recommend both motions be denied.

## BACKGROUND

On January 27, 2016, a federal grand jury returned a Superseding Indictment charging Haynie and other individuals with several offenses arising out their alleged criminal activities in connection with the 40th and 44th Ave. Crips street gangs. Haynie is charged with a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. 1962(d)(Count One); attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959 (a)(5) (Count Two); attempt to commit assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6) (Count Three); and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(l)(A)(ii) and (iii) (Count Four). Count One lists the overt acts allegedly committed by Haynie during the course of the conspiracy, including:

- On September 25, 2008, using a firearm to shoot at Victim #1;

- Beginning in or around August 2011 and continuing until in or around May 2013, selling and distributing cocaine base;
- On November 25, 2011, possessing with intent to distribute cocaine base and possessing U.S. currency; and
- On September 6, 2012, shooting at a residence occupied by Victim #2 for talking to law enforcement.

([Filing No. 33 at pp. 7-12](#)).  Counts Two through Four arise out of the September 6, 2012, incident.

The charges in this case are the result of a several year, multi-agency investigation into the 40th and 44th Avenue Crips street gang, led by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") with cooperation from local police. The grand jury also was presented with evidence obtained by the Greater Omaha Safe Streets Violent Gang Task Force ("GOSSTF") through their "Purple Haze" investigation into local gangs' drug trafficking activities.  In August 2012, the GOSSTF, comprised of local law enforcement officers and the FBI, began working with various other federal and local law enforcement agencies to investigate the narcotic and violent crime activities of local street gangs, including the 40th Ave. Crips.  A Memorandum of Understanding between the FBI and local law enforcement states, "The purpose of this agreement is to maximize inter-agency cooperation and create a close-knit cohesive unit capable of addressing violent crimes and gang-related problems resulting from Omaha area-based criminal enterprise organizations."

During the Purple Haze investigation, Douglas County Attorney Donald Kleine obtained state wiretaps for certain target phones used by defendant Haynie and Vernon Elmore, both members of the 40th Ave. Crips.  On November 7, 2012, Douglas County District Court Judge Gary Randall authorized a warrant to intercept telephone and text message communications on two cellular telephones, Target Telephone 1 ("TT1"), used by Haynie, and Target Telephone 2 ("TT2"), used by Elmore.  Mr. Kleine's 46-page affidavit

2

submitted with the application for the warrant outlined information Kleine learned from various law enforcement officers, including Omaha Police Officer J.P. Paul, during their investigations.

The affidavit includes information provided to law enforcement from three individuals who either bought or sold quantities of crack cocaine to Haynie between 1999 and 2007. The affidavit also includes information from a confidential source, who had provided reliable information to law enforcement from July 2012 to the date of the affidavit and made several purchases of narcotics on behalf of law enforcement. The confidential source conducted one consensually-recorded and controlled purchase of crack cocaine from Haynie on August 21, 2012. The controlled purchase was arranged using the phone number associated with TT1. Haynie answered the phone call placed to TT1. The confidential source also advised law enforcement that on September 13, 2012, during a controlled purchase of crack cocaine from Elmore, the confidential source saw a large amount of crack cocaine being "cooked" at one of the 40th Ave. Crips' gang's base operation residences, with Haynie, Elmore, and other 40th Ave. Crips members present. The confidential source, who wished to remain anonymous due to safety concerns, personally knew Haynie and the other subjects targeted in the warrant for several years. The confidential source's information regarding the target subjects and interceptees was "corroborated by current and historical information possessed by law enforcement, physical surveillance, and through consensually recorded and controlled drug purchases" by the confidential source and an undercover agent.

The affidavit stated that the wiretap was necessary to discover the identity of a number of unknown criminal associates of Elmore and Haynie, including the individuals responsible for maintaining the "stash" locations, the individuals responsible for transporting the narcotics, the individuals handling the financial proceeds from the illicit transactions, and the individual(s) supplying the enterprise with narcotics. The affidavit outlined traditional investigative techniques law enforcement officers had already used or

3

considered, including physical surveillance, pen register analysis, telephone records, an undercover law enforcement officer, and a confidential informant to establish that the violent criminal enterprise and narcotics trafficking was ongoing. Based on Officer J.P. Paul's training and experience, he was of the opinion that the interception of the requested wire and electronic communications was the only remaining investigative technique that has a reasonable likelihood of securing the evidence necessary to prove the scope of the illegal activities of the named individuals.

As a result of the above investigations, Haynie has been arrested and charged on several occasions with multiple federal and state offenses:

- On May 31, 2007, Haynie was charged in the District Court of Douglas County with two counts of attempt to commit a felony, three counts of use of a firearm to commit a felony, and one count of unlawful discharge of a firearm. The charges were dismissed on January 30, 2008.

- On September 16, 2009, Haynie was charged in the District Court of Douglas County with one count of carrying a concealed weapon and one count of possession of an unregistered firearm. The state dismissed the charges on November 5, 2009.

- On October 21, 2009, a federal grand jury in the District of Nebraska returned an indictment charging Haynie with being a drug user in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). This indictment arose out of the same factual circumstances as the September 16, 2009, state charges. A jury trial was held, after which the Court granted defendant's motion for a mistrial, and the government moved to dismiss the case without prejudice.

- On December 30, 2011, Haynie was charged in the District Court of Douglas County with one count of possession of base cocaine. The date of offense was November 25, 2011. Haynie pleaded guilty and ultimately was sentenced on May 15, 2014, to a term of 20-48 months in jail.

4

- On July 1, 2013, Haynie was charged in the District Court of Douglas County with four counts of manufacturing, distributing, or possession with intent to distribute base cocaine and conspiracy to commit a class 1B felony. The dates of offense ranged from July 26, 2012, to May 14, 2013. On February 28, 2014, Haynie pleaded no contest to two counts of manufacturing, distributing, or possession with intent to distribute base cocaine and was sentenced to 3 to 6 years of imprisonment, to run consecutive to the sentence above.

Haynie has filed the instant motion to dismiss, arguing that double jeopardy bars prosecution of the charges in this case. (Filing No. 182). Haynie contends that the RICO indictment encompasses the criminal charges referenced above and are based on the same factual circumstances. (Filing No. 183 at p. 2). Haynie asserts the instant case is the result of collusion between state and federal authorities such that they should not be considered separate sovereigns for purposes of the Double Jeopardy Clause. (Filing No. 183 at p. 3).

Haynie also moves to suppress any evidence obtained by law enforcement from the November 7, 2012, wiretap warrant, arguing that there was insufficient probable cause and lack of necessity to intercept Haynie's communications. (Filing No. 258 at p. 1).

## DISCUSSION

### A. Motion to Dismiss for Double Jeopardy

"The Fifth Amendment prevents criminal defendants from being 'twice put in jeopardy' in connection with the same offense, a guarantee that encompasses a second prosecution for the same offense after either conviction or acquittal as well as the imposition of multiple punishments." *United States v. Hively*, 437 F.3d 752, 762 (8th Cir. 2006) (citations omitted). The Fifth Amendment "'provides a criminal defendant with three protections. The first two guard against successive prosecution, either after an acquittal or after a conviction'. . . . The third protects against 'multiple punishments for the

5

same offense.'" *United States v. Amaya*, 750 F.3d 721, 724 (8th Cir. 2014) (quoting *Dodge v. Robinson*, 625 F.3d 1014, 1017 (8th Cir. 2010) and *Bally v. Kemna*, 65 F.3d 104, 106 (8th Cir. 1995)). "[J]eopardy attaches when the jury is empaneled and sworn." *Martinez v. Illinois*, 134 S. Ct. 2070, 2074 (2014) (quoting *Crist v. Bretz*, 437 U.S. 28, 35 (1978)).

As an initial matter, the undersigned agrees with the government's contention that Haynie's prior convictions are not the "same offense" as the charges against him in the Superseding Indictment for purposes of the Double Jeopardy clause. Courts apply the United States Supreme Court's same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine if two offenses are the "same offense" for purposes of the Double Jeopardy Clause. The *Blockburger* test asks whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution. *Blockberger v. United States*, 28 U.S. 299 (1932); *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted). If the offenses are not the same under the *Blockberger* test, double jeopardy does not apply even if the offenses involve the same conduct. See *id.* at 711.

Haynie has never been charged in state or federal court for the charges against him in Counts Two, Three, and Four, which all arise out of the same factual allegations that on September 6, 2012, Haynie shot into Victim #2's house for talking to police. As this is the first time Haynie has faced prosecution in any court for that conduct, the Double Jeopardy Clause is not implicated with respect to those counts.

With respect to Count One, Haynie is charged with a RICO conspiracy. The elements of a RICO conspiracy are: (1) the existence of an enterprise engaged in a pattern of racketeering activity; (2) the enterprise was engaged in, or its activities affected, interstate or foreign commerce; and (3) each defendant knowingly agreed that he or some other member of the conspiracy would commit at least two racketeering acts. See *Salinas v. United States*, 522 U.S. 52, 62-65 (1997); *United States v. Darden*, 70 F.3d 1507, 1518

6

(8th Cir. 1995). Haynie's previous convictions for possession of a controlled substance and manufacturing, distribution, or possession of base cocaine contain none of the same elements required to prove a RICO conspiracy, and the RICO conspiracy contains elements those offenses do not. Although the government may introduce evidence regarding the same factual conduct of possession or distribution of cocaine base in the RICO conspiracy case, the government is not required to prove any of Haynie's prior offenses to convict him of RICO conspiracy. See *Dixon* 509 U.S. at 711 (If the offenses are not the same under the *Blockberger* test, double jeopardy does not apply even if the offenses involve the same conduct.). Therefore, the undersigned finds the Double Jeopardy Clause is inapplicable to any of the charges against Haynie in this case.

Even assuming the charges against Haynie in this case are the "same offense" for which he has previously been convicted in state court, the undersigned finds the Double Jeopardy Clause does not apply because the federal government is a separate sovereign from the State of Nebraska. "The dual sovereignty doctrine provides that although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution." *United States v. Johnson*, 169 F.3d 1092, 1095-96 (8th Cir. 1999). Haynie contends his prosecution falls under an exception to the dual-sovereignty doctrine set forth in the dicta of *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959). That is, "[A] subsequent state prosecution that is a 'sham and cover' may violate the Double Jeopardy Clause if the state prosecutors were merely the 'tools' of the federal government; i.e., if the state prosecution was de facto a second federal prosecution." *United States v. Leathers*, 354 F.3d 955, 960 (8th Cir. 2004) (citing *Bartkus*, 359 U.S. at 123-24). The Eighth Circuit has "never explicitly held that the *Bartkus* exception applies to subsequent federal prosecutions." *Id.*

"A defendant claiming double jeopardy bears the initial burden to establish a non-frivolous prima facie claim. If this threshold showing is made, a separate evidentiary hearing may be required, but only if the relevant facts cannot otherwise be ascertained."

*Hively*, 437 F.3d at 762 (internal citations omitted). In an overabundance of caution, the undersigned held a hearing regarding Haynie's claim that the instant prosecution is a "sham and cover." Haynie introduced testimony from the state prosecutors involved in the "Purple Haze" investigation and Haynie's charges in state court, Jeffrey Lux and James Masteller; Haynie's former federal public defender, Jessica Douglas; Corey Shelton, Special Agent with the ATF; Nikki Lasater, an officer of the Omaha Police Department; and Officer J.P. Paul, OPD officer and member of the GOSSTF.

Assuming that the *Bartkus* exception applies to subsequent federal prosecutions, Haynie produced no evidence establishing that the instant federal prosecution is a "sham and cover" within the meaning of *Bartkus*. At most, the evidence presented by Haynie shows that local and federal law enforcement agencies have cooperated and coordinated their investigative efforts into the 40th Ave. and 44th Ave. Crips street gangs. However, "Cooperation between local and federal law enforcement officers does not in itself affect the identity of the prosecuting sovereign." *United States v. Johnson*, 169 F.3d 1092, 1096 (8th Cir. 1999). "The critical factor is whether or not the sovereign bringing the second prosecution was acting independently." *Id.* (quoting *Bartkus*, 359 U.S. at 124). The testimony from both Mr. Lux and Mr. Mastellsar was clear that they both were responsible for making their own charging decisions in state court, and they received no direction from the U.S. Attorney's office regarding prosecution decisions. Likewise, there was no evidence that federal prosecutors in this case are merely "tools" of the state. See *Leathers*, 354 F.3d at 960. In reviewing the evidence and testimony, the undersigned concludes that Haynie has not met his burden to show the *Bartkus* exception applies, and thus the instant charges do not violate the Double Jeopardy Clause. Therefore, the undersigned finds and recommends that Haynie's Motion to Dismiss be denied.

### B. Motion to Suppress

Haynie moves to suppress any evidence obtained by law enforcement from the November 7, 2012, wiretap warrant, arguing that there was insufficient probable cause and

a failure to show the required necessity intercept Haynie's communications. Haynie argues that the order of authorization was insufficient on its face pursuant to 18 U.S.C.§ 2518(10)(a)(2). (Filing No. 258 at p. 1). At the hearing on this motion, counsel for Haynie clarified he did not request a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Pursuant to 18 U.S.C. § 2518, a judge may authorize a wiretap upon a determination that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter," *Id.* § 2518(3)(a), and that "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." *Id.* § 2518(3) (b). "The probable cause showing required by section 2518 for electronic surveillance does not differ from that required by the fourth amendment for a search warrant." *United States v. Macklin*, 902 F.2d 1320, 1324 (8th Cir. 1990). "Thus, to grant an application for a wiretap, district courts must make a 'practical, common-sense decision whether,' considering the 'totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Thompson*, 690 F.3d 977, 984 (8th Cir. 2012) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). An issuing judge's determination of probable cause "should be paid great deference by reviewing courts." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

After a thorough examination of the extensive affidavit in support of the application for wiretap surveillance, and considering the totality of the circumstances, the undersigned finds that the affidavit provided the issuing judge with more than a substantial basis to believe Haynie was involved in a conspiracy to distribute cocaine base, and that communications concerning that conspiracy would be intercepted by the wiretaps authorized. The affidavit submitted with the application for the warrant included information from several sources that Haynie had been involved in sale of cocaine base on an ongoing basis for several years prior to when the affidavit was submitted. Although

Haynie argues there was insufficient information to show that he was using the targeted telephone number to engage in recent criminal activities and that he has not admitted gang affiliation, the affidavit included recent information from a confidential source, who had known Haynie personally for several years, establishing that Haynie uses TT1.  Law enforcement arranged a controlled purchase from Haynie using TT1 on August 21, 2012. The confidential source also observed Haynie and other targets of the investigation cooking a large quantity of cocaine base on September 13, 2012, in a residence known to be part of the 40th Ave. Crips' base operations.  Additionally, law enforcement obtained information from pen registers between October 12, 2012, and November 4, 2012, showing that Haynie used TT1 to frequently contact Elmore.  The affidavit included detailed information regarding Elmore's involvement in distributing cocaine base.

The confidential source provided information to law enforcement regarding Haynie's recent and continued distribution of quantities of crack cocaine.  "[W]here recent information corroborates otherwise stale information, probable cause may be found."  *United States v. Kattaria*, 553 F.3d 1171, 1176 (8th Cir. 2009) (quoting *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995).  Where the nature of the criminal activity "is continuous and ongoing, as with this drug conspiracy, any lapse of time is less significant."  *Macklin*, 902 F.2d at 1326.  Moreover, although Haynie asserts the confidential source's information was unsubstantiated, the affidavit provides information that the confidential source's information regarding the subjects targeted in the warrant was "corroborated by current and historical information possessed by law enforcement, physical surveillance, and through consensually recorded and controlled drug purchases" by the confidential source and an undercover agent.  In consideration of the above, the undersigned finds and concludes there was probable cause under 18 U.S.C. § 2518 to issue the wiretap warrant in this case.

Finally, even if probable cause did not exist to issue the warrant in this case, the undersigned finds the good faith exception to the exclusionary rule would save the

10

evidence seized from being suppressed. An exception to the exclusionary rule applies where officers rely on a warrant in good faith. *United States v. Hessman*, 369 F.3d 1016, 1019 (8th Cir. 2004). The good-faith exception espoused in *Leon* applies to § 2518(10)(a) suppression issues. See *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 920 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *Leon*, 468 U.S. at 921).

There is no evidence that Judge Randall was provided false information or was misled. Given the quantity of information and detail provided in the 46-page affidavit, the undersigned cannot say that the affidavit was so lacking in probable cause as to make belief in the warrant entirely unreasonable. Accordingly, the undersigned concludes the officers reasonably relied on the affidavit and subsequent warrant in good faith. See *Leon*, 468 U.S. 897.

Haynie next argues the affidavit and application "failed to meet the specific 'necessity' requirement of 18 U.S.C. § 2518." (Filing No. 258 at p. 5). "Wiretap application[s] must include 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" *United States v. Scherrer*, 640 F. App'x 580, 582 (8th Cir. 2016) (quoting *United States v. Milliner*, 765 F.3d 836, 839 (8th Cir. 2014). "Prior to issuing a wiretap order, the district court "must find that 'normal investigative procedures' have failed or 'reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" *Id.* (quoting *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009)). "If law enforcement officers are able to establish that conventional

11

investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." *Id.* (quoting *United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015)).

In this case, the affidavit in support of the wiretap orders described in detail the investigative techniques that were tried and failed, the techniques that reasonably appeared to be unlikely to succeed, and the techniques that were too dangerous to employ. Prior to requesting the November 2012, wiretap warrant, the GOSSTF and other law enforcement agencies utilized various investigative steps, including confidential sources, search and arrest warrants, witness debriefs, pen registers, pole cameras, and undercover operations. Pole cameras were installed on October 19, 2012, at the two primary residences of the gang, and an additional pole camera was set up at a third residence. The pole cameras were used to observe controlled purchases at the residences, but its use is limited due to no sound. Law enforcement also contemplated placing tracking devices on vehicles, but the devices were not yet utilized because law enforcement may not be able to install the devices undetected. The affidavit also explained the limitations of cell site data, GPS precision Location/Mobile Tracking Device Order.

Officer Paul described why additional traditional investigative techniques would be unlikely to succeed. Officer Paul did not believe an additional undercover law enforcement agent would be able to infiltrate the gang to a higher level that the undercover officer already in use. Additionally, the scope of the information available to confidential informants is limited, as compartmentalization and secrecy amongst the gang is common. Physical surveillance had been attempted on several occasions during the course of the investigation, with minimal results, because the gang's primary area of operations is located in a place that stationary surveillance poses a high risk of alerting the targeted individuals. Gangs utilize lookouts and counter-surveillance and thus there is a high risk the law enforcement conducting surveillance will be detected. Moreover, prolonged or regular physical surveillance could alert the subjects to be more cautious in their illegal

12

activities, flee, or otherwise compromise the investigation. Officer Paul was of the opinion that public assistance has little value in a case such as this where only a few trusted individuals have relevant knowledge, and where retaliation against those who do talk to law enforcement is common.

Based on Officer J.P. Paul's training and experience, he was of the opinion that the requested wire and electronic communications was the only remaining investigative technique that has a reasonable likelihood of securing the evidence necessary to prove the scope of the illegal activities of the named individuals. The affidavit provided that the wiretap was necessary because there were a number of unknown criminal associates of Elmore and Haynie, including the individuals responsible for maintaining the "stash" locations, the individuals responsible for transporting the narcotics, the individuals handling the financial proceeds from the illicit transactions, and the individual(s) supplying the enterprise with narcotics. In consideration of the above, the undersigned finds and concludes that the affidavit adequately described the necessity for the wiretap warrant, in accordance with 18 U.S.C. § 2518. Therefore, the undersigned recommends that Haynie's Motion to Suppress be denied. Accordingly,

**IT IS HEREBY RECOMMENDED to Senior Judge Joseph Bataillon** that defendant Haynie's Motion to Dismiss Indictment (Double Jeopardy) (Filing No. 182) and the Motion to Suppress and Request for Evidentiary Hearing and Oral Argument (Filing No. 257) be denied.

## ADMONITION

Pursuant to NECrimR 59.2, any party may object to a magistrate judge's order by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. Failure to timely object may constitute a waiver of any objection.

**DATED: January 9, 2017**

**BY THE COURT:**

**s/ F.A. Gossett, III**
**United States Magistrate Judge**