IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:15CR343 |
| v. | SENTENCING MEMORANDUM |
| JARRELL HAYNIE, | |
| Defendant. | |

This Sentencing Memorandum supplements findings made on the record at defendant's sentencing hearing on July 2, 2018. For the reasons set forth below, the court finds the defendant's objections to the presentence investigation report, Filing No. 695, should be sustained in part and overruled in part, and the defendant's motions for a departure or a variance from the Guidelines, Filing No. 683 and Filing No. 687, should be denied.

I.  BACKGROUND

The defendant was charged, along with others, in a four count Second Superseding Indictment ("SSI"). He was charged in Count 1 with involvement in racketeering in violation of 18 U.S.C. § 1962(d) ("RICO"). He was charged with five overt acts in furtherance of the racketeering enterprise in Count 1: using a firearm to shoot at victim #1 on or about September 25, 2008 (¶ 14); selling and distributing crack cocaine in Omaha from August 2011 to May 2013 (¶ 15); possessing with intent to distribute cocaine on or about November 25, 2011 (¶ 16); and arguing with victim #2 and shooting at a residence occupied by victim #2 on or about September 6, 2012 (¶¶ 20-21). In Count 2, the defendant was charged with attempted murder of victim #2 in

aid of racketeering, in violation of Nebraska state statue §§ 28-201, 28-302, and 28-303, and in violation of 18 U.S.C. § 1959(a)(5) and section 2.  In Count 3, Haynie was charged with attempted assault with a firearm, in aid of racketeering, in violation of Nebraska state statue §§ 28-201 and 28-309, in violation of 18 U.S.C. § 1959(a)(6) and section 2 on or about September 6, 2012.  In Count 4, he was charged with discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii), on or about September 6, 2012.

The action was tried to a jury and the jury found Haynie guilty of racketeering (Count 1) but acquitted him of the remaining counts.  Filing No. 633, Verdict.  The court directed the United States Office of Probation (hereinafter, "the Probation Office") to prepare a Presentence Investigation Report (hereinafter, "PSR") that calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 635, Order on Sentencing Schedule.

In the PSR, the Probation Office identified U.S.S.G. § 2E1.1 as the guideline applicable to a racketeering offense under 18 U.S.C. § 1962.  Filing No. 704, PSR (Sealed).  That guideline states that the base offense level for a racketeering offense is 19 or "the offense level applicable to the underlying racketeering activity."  U.S.S.G. § 2E1.1(a)(1) and (2).   "Where there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2)."  U.S.S.G. § 2E1.1 cmt. n. 1.  To determine whether subsection (a)(1) or (a)(2) results in the greater offense level, Chapter Three adjustments are applied, including adjustments for multiple counts, to both (a)(1) and (a)(2).  *Id.*

2

The Probation Office found four overt acts for purposes of grouping conduct connected to the underlying racketeering activity. Filing No. 704, PSR at 14. Group #1 included the conduct on September 25, 2008, involving the defendant shooting at victim #1 (Richard Johnson) who was believed to be an informant. *Id.* at 12. Group #2 included drug trafficking for which the defendant was sentenced in state court (Douglas County District Court case # CR13-1896), but because the conviction occurred after the last overt act, the conduct was treated as part of the instant offense, and not as a prior sentence under U.S.S.G. § 4A1.2(a)(1). *Id.* Group #3 included a drug trafficking offense for which the defendant was convicted in state court (Douglas County District Court case # CR11-2877), but because it resulted from a conviction prior to the last overt act of the instant offense, it was treated as a prior sentence under §4A1.2(a)(1) and not as part of the instant offense. Group #4 included the conduct on September 6, 2012, involving the defendant shooting at victim #2 (Michael Liggins) who was accused of talking to law enforcement. The conduct in Group #1 and Group # 4 was considered attempted murder and each group was assigned a base offense level of 33. The Group #2 conduct was considered drug distribution and assigned a base offense level of 19. *Id.* at 12-13. The group #3 drug distribution conduct was not assigned a base offense level because the defendant had been previously sentenced for the conduct. *Id.* at 13. The Probation Office conducted a multiple count adjustment under U.S.S.G. 3D1.4, which reslted in a 2-unit adjustment for a total offense level of 35. *Id.* at 14.

The probation office next determined the defendant's criminal history category was V, based on the assessment of 9 criminal history points for convictions for drug possession, misdemeanor assault, no operator's license, driving under suspension,

reckless driving, and obstruction of justice, and 2 criminal history points for committing the offense while under a criminal justice sentence. *Id.* at 14-20. At base offense level 35 and criminal history category V, Haynie's Guidelines sentencing range would have been 262 to 327 months, but since that range exceeds the statutory maximum for the offense of conviction, the statutory maximum of 240 months is the Guidelines sentence. *Id.* at 24.

The defendant objected to the PSR, [Filing No. 695](), and moved for a downward departure/variance, [Filing No. 683]() and [Filing No. 687](). He argued for a downward departure for overstatement of criminal history category, contending that many criminal history points were assessed for numerous offenses that were not serious. He also objected to the assessment of 2 criminal history points for committing the crime while under a sentence for another crime, arguing that his state drug-court sentence conviction does not qualify as a criminal justice sentence. He argued that he properly belonged in criminal history category IV. He also asserted a blanket objection to the ultimate calculation of his guideline range, arguing that his total offense level should be 19, which, at criminal history category IV, would result in a guideline range of 46-57 months.

Haynie's argument is generally based on the contention that conduct for which he was acquitted should not be considered in determining his Guidelines sentence. Although he acknowledges that uncharged or acquitted conduct could be considered at sentencing, he argues that the government should not now be able to use testimony and evidence that was problematic at trial to levy a more severe sentence when the government was unable to prove the facts at trial.

In the PSR, based primarily on the prosecutor's version of events, the Probation Office outlines as overt acts incidents involving Richard Johnson and Michael Liggins. Haynie objects to those portions of the PSR.[1] Those alleged incidents, characterized as attempted murder, are the basis for the Probation Office's attribution of base offense levels of 33 and a total offense level of 35. Essentially, the defendant argues that, although there is a preponderance of evidence to support using overt acts of drug trafficking as racketeering offenses, the government has not proved the attempted murder conduct by even a preponderance of evidence. He argues that base offense levels of 19 should be assigned to his drug trafficking grouped conduct under U.S.S.G. § 2E1.1(a)(1) and to his other grouped conduct (assault rather than attempted murder) under U.S.S.G. 2E1.1(b).[2] The government, on the other hand, argues for the statutory maximum sentence. [Filing No. 700](Filing No. 700). It contends that the court should find Haynie culpable for the attempted murders of Michael Liggins and Richard Johnson.

At the sentencing hearing, the government moved for judicial notice of the trial and offered evidence of other criminal acts. Specifically, it offered, and the court received, the grand jury testimony of Vernon Elmore; the proffer interview of Ron Newman; the report of a shooting incident on April 27, 2005; the proffer interviews of Shannon Reed and Otis Simmons; and a police report of law enforcement observation

---

[1] Defendant essentially objected to ¶¶ 17 to 36 of the PSR. Those paragraphs relate to the government's version of events. The blanket objection to the government's version of events will be overruled. The government has the right to state its version of events as a matter of its advocacy. The court does not view the recital as a statement of established facts.

[2] The parties apparently agree that the base offense level under the Guidelines is 14 for an assault under U.S.S.G. 2A2.2(a), increased by 5 levels for discharge of a firearm under § 2A2.2 (b)(2)(A), for a total offense level of 19.

5

of Haynie in possession of firearm on September 15, 2009. See Filing No. 698, Index of Evid., Exs. 134 to 138.[3]

  II.  LAW

Although a sentencing court must give respectful consideration to the Sentencing Guidelines, the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), permits the court to tailor the sentence in light of other statutory concerns as well. *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011). The district court follows the sentencing framework set forth by the Supreme Court in *Gall v. United States*, 552 U.S. 38, 49-51 (2007). See *United States v. Washington*, 515 F.3d 861, 865-66 (8th Cir. 2008) ("We urge district courts to continue to engage in the three-step process of first ascertaining the applicable Guidelines range, then considering any permissible departures within the Guidelines' structure, and finally, deciding whether a non-Guidelines sentence would be more appropriate under the circumstances pursuant to § 3553(a)."). The first step is to calculate the defendant's advisory Guidelines sentencing range, which provides "the starting point and the initial benchmark" for any sentence. *Gall*, 552 U.S. at 49. Next, the court determines whether any traditional Guidelines departures are warranted. *Washington*, 515 F.3d at 865. Finally, the court considers

---

[3]"When a defendant objects to statements in the PSR, 'the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Chapman*, 720 F. App'x 794, 797 (8th Cir. 2018), *cert. denied*, No. 17-8952, 2018 WL 2290828 (June 18, 2018) (quoting *United States v. Kozohorsky*, 708 F.3d 1028, 1033 (8th Cir. 2013)). "Sentencing judges are not 'restricted to evidence derived from the examination and cross-examination of witnesses . . . but may . . . consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime.'" *Chapman*, 720 F. App'x at 797 (quoting *United States v. Chambers*, 878 F.3d 616 (8th Cir. 2017) (citation omitted).

6

whether to vary from the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a).[4]  *Gall*, 552 U.S. at 49-50; *United States v. VandeBrake*, 679 F.3d 1030, 1039 n. 7 (8th Cir. 2012).

The court is not to presume that the Guidelines range is reasonable, but is required to make an individualized assessment based on the facts of each case under 18 U.S.C. § 3553(a).  *Gall*, 552 U.S. at 50.  Ultimately, the court must impose a sentence "in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007).

The Sentencing Guidelines lay out a method for determining a numerical offense level for federal crimes, which, when combined with a defendant's criminal history score, yield a sentencing range.  *United States v. Gjeli*, 867 F.3d 418, 424 (3d Cir. 2017), *as amended* (Aug. 23, 2017), *cert. denied sub nom. Mustafaraj v. United States*, 138 S. Ct. 697 (2018), *and cert. denied*, 138 S. Ct. 700 (2018).  The Statutory Index, Appendix A of the Sentencing Guidelines, states that for 18 U.S.C. § 1962 convictions, the corresponding guideline is U.S.S.G. § 2E1.1.  U.S.S.G. App A.  Section 2E1.1 of the Guidelines provides that the base offense level for racketeering offenses is the greater

---

[4] Under § 3553 (a), the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant as well as the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).  Further, the court must consider the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *Id.* The court must also consult and take into account the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto, and must consider the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. *Id.*

of either level 19 or the level applicable to the underlying racketeering activity, which, if it involved more than one underlying offense, as it did here, is "treat[ed] [as if] each underlying offense [is] contained in a separate count of conviction." U.S.S.G. § 2E1.1, cmt. n. 1.

In a complex RICO conspiracy where the jury was not asked to find that the defendant committed specific predicate acts, determining the proper "underlying racketeering activity" for guidelines purposes is not simple. *See United States v. Smith*, No. 4:11 CR 246 CDP, 2013 WL 1667320, at *3 (E.D. Mo. Apr. 17, 2013). To calculate the level applicable to the underlying racketeering activity, the court "must launch on a journey through the Guidelines' labyrinthine provisions for grouping offenses." *Gjeli*, 867 F.3d at 424. The Third Circuit Court of Appeals explains:

> After identifying the underlying racketeering offenses the court then groups together closely related ones, in accordance with Chapter 3 of the Guidelines. *Id.* § 3D1.2. Once those offenses are grouped, the court assigns a base offense level to each "Group" based on the nature of the grouping and of the offenses grouped. *Id.* § 3D1.3. In assigning the base offense level to each Group, the court looks to the highest offense level of the underlying offenses in that Group. *Id.* § 3D1.3.
> 
> After the offense level has been determined for each Group, the sentencing court must then determine the combined offense level of all the Groups. To do so, the court "tak[es] the offense level applicable to the Group with the highest offense level and increas[es] that offense level by the amount indicated" in a table included in the Guidelines. *Id.* § 3D1.4. That table requires the court to assign "Units" to each Group. *Id.* One Unit is assigned to the Group with the highest offense level. *Id.* § 3D1.4(a). . . . "[A]ny Group that is 9 or more levels less serious than the Group with the highest offense level" is to be disregarded. *Id.* § 3D1.4(c). Based on the total number of Units, the base offense level can be increased up to a maximum of 5 levels, if the sum of the Units is 5 or greater. *Id.* § 3D1.4.

8

*Gjeli*, 867 F.3d at 425. The district court may consider uncharged, dismissed, and even acquitted conduct at sentencing. *United States v. Chambers*, 878 F.3d 616, 622 (8th Cir. 2017).

III. DISCUSSION

A. Initial Guidelines Calculation

In making its initial Guidelines calculation, the court generally accepts the presentence investigation report, but, for the reasons set out below, finds the defendants objections to the PSR's Guidelines calculations should be sustained in part. Most importantly, the court finds that the defendant's objection to the PSR determination of base offense level 35 should be sustained. The issue is whether the government has proved the real crux of the guideline calculation—what is the racketeering conduct underlying the defendant's conviction—by a preponderance of evidence.[5] If the court agrees with the government that the underlying offense is attempted murder for the conduct charged in ¶¶ 20 and 21 of the second superseding indictment, then it increases the guideline base offense level calculation to level 33. If the court believes the conduct is closer to an assault with a firearm, the base offense level is 19 as to each of the two incidents charged in the second superseding indictment at ¶¶ 20 and 21 and identified and grouped in the PSR.

The court finds the government has not shown by a preponderance of evidence that the defendant committed racketeering acts of attempted murder, so as to result in a

---

[5] The government concedes that it is possible that the jury just decided the racketeering count on the drug charges. The drug trafficking charges are supported by the jury verdict and by the evidence adduced at trial, whereas the attempted murder allegations charges are not necessarily supported, given the acquittals on the substantive counts.

9

Guidelines base offense level of 33, adjusted after grouping to 35. The conduct that the government has proved as an underlying racketeering activity is assault with a deadly weapon, rather than attempted murder. The court generally credits the testimony of Mr. Elmore. With respect to the Liggins incident, there is evidence that a shooting clearly took place on the night alleged. However, the jury's acquittal of Haynie on the charges involving that incident reflects a dearth of evidence as to the culpable conduct of attempted murder. The evidence, however, supports the finding, by a preponderance of evidence, that the conduct amounts to assault with a firearm. With respect to the Richard Johnson incident, the security guard's testimony was very confusing and not particularly credible. His testimony coupled with that of Mr. Johnson and the investigating officers established, by a preponderance of evidence, that a shooting occurred that night and that Johnson was shot at by members of Haynie's gang. The court finds by a preponderance of evidence that Haynie participated in the events that led up to the shooting and would clearly be liable at least an aider and abettor.

To apply the offense levels applicable to attempted murder (either first degree or second degree) would overstate the seriousness of the defendant's racketeering acts in connection with the two incidents. The record lacks evidence of intent. The court finds that the offense level applicable to the underlying racketeering activities for Haynie's conviction that are based on incidents involving Johnson and Liggins are more appropriately the offense levels for assaults than for attempted murders.

The evidence supports the finding that the defendant committed racketeering drug-trafficking acts and racketeering acts of assaults with deadly weapons. The parties agree that the base offense level for such conduct would be base offense level

19 (base offense level 14 for the assault plus 5 for the weapon). The court thus finds the defendant's base offense level is therefore 19 for each of the three Groups considered by the Probation Office, increased to 22 by application of 3 units pursuant to the grouping rules under U.S.S.G. § 3D1.4.[6]

The court finds the defendant's motion for a downward departure for overstatement of criminal history should be denied and Haynie's criminal history category remains V. The objections to paragraphs 91 through 107 of the PSR, which includes paragraph 106 that gives the two extra points for a sentence during criminal justice act supervision, are all overruled except as consistent with the court's findings herein. Accordingly, the court finds the defendant's Guidelines sentencing range is 77 to 96 months.

B.  Section 3553 Factors

In consideration of the sentencing factors under § 3553, the court finds that a sentence of 84 months is appropriate in this case. The defendant is presently serving time in state prison for the same actions the government charged in this case. He has been in state custody since June of 2013. He was sentenced in state court to roughly eight to sixteen years. Under state court guidelines and good-time rules, he could be released at any time from August of this year when a parole hearing is scheduled, to sometime in 2021, his mandatory release date. Defense counsel argues that it is

---

[6] At the sentencing hearing, the Probation Officer explained that there were four groups to consider: The Johnson matter, two separate drug overt acts, and the Liggins matter. Only one of the drug overt acts counts because the defendant is serving state time for that conduct. The result is three units. The calculation in the PSR applied only two units because the base offense level for one of the offenses exceeded the other base offense levels by more than 9 levels and was disregarded.

11

unlikely that he will be paroled in state court because of the present charges and argues for a concurrent sentence. The government argues for a sentence of twenty years, the statutory maximum.

Based on the court's familiarity with state sentencing, the court finds Haynie's state sentence of three consecutive sentences on drug trafficking charges resulting in imprisonment for eight to sixteen years is a high sentence for state court. In the court's experience, the relatively high sentence Haynie received in state court for the drug crimes is clearly linked to his gang activity in addition to his drug dealing activity, and the gang activity includes shootings and all manner of violence. Accordingly, his culpable violent conduct has been accounted for, to some extent, in the state court sentence.

The fact remains that Haynie has not been held directly accountable for the violent criminal conduct that is part of the racketeering conviction herein. In order to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, the court finds his federal sentence should include some time in addition to his state court sentence. A sentence roughly in the middle of the advisory Guidelines range seems appropriate under the circumstances of this case. Accordingly, the court finds the defendant should be sentenced to 84 months, beginning on the date of the sentencing hearing, July 2, 2018, and without credit for any related state sentence previously served.

This equates to a seven-year sentence that will extend beyond his period of state custody, regardless of whether or not the defendant is paroled on state charges. The court has also considered the history and characteristics of the defendant in making this

determination.  Haynie is presently thirty-six years old and has a criminal record dating back to 1996.  He has been associated with Fortieth Avenue Crips gang and has several gang tattoos.  He has engaged in violent acts and is known to carry handguns.  He has abused alcohol, marijuana and cocaine, admits he has drug and alcohol abuse problems and is willing to attend counselling and treatment.  In light of the defendant's criminal history, the court finds that a sentence including additional incarceration for some significant length of time beyond his state court sentence is warranted.

This sentence extends his state custody considerably, but not inordinately, in consideration of the seriousness of the crime and the defendant's criminal history and gang ties.  By virtue of his state court sentence for the same conduct, the resulting sentence, in actual terms, is closer to the twenty years requested by the government and satisfies the sentencing factor of deterrence.  The value of any additional prison time as a deterrent would be marginal.  The sentence is adequate to achieve the goals of sentencing, to establish some level of proportionality with respect to other racketeering crimes, and to reduce the perception of unwarranted disparity.

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of 84 months (seven years), partially concurrent to his state court sentence, is sufficient, but not greater than necessary, to accomplish the goals of sentencing.  In formulating this sentence, the court has considered the sentencing range established by the Guidelines and finds a Guidelines sentence, as determined by the court, is appropriate in this case and satisfies the purposes of sentencing.  This sentence is within the Guidelines sentencing range under the court's calculation and application of the grouping rules. A sentence of any greater length, even if the

guidelines range were calculated to be the statutory maximum of twenty years, would be greater than necessary to meet the sentencing objectives. Thus, even if the guidelines range had been higher, the court would have varied downward and would have imposed the same sentence.

Although the law is clear the court is required to consider evidence that supports the government's position by a preponderance, the court is reluctant to impose a sentence on a defendant as though the jury never acquitted the defendant of those same acts and offenses. In this court's opinion, it is important to give due deference to the jury's decision while recognizing the guidelines and following the statutory scheme. In the instant case, the court sentences the defendant for the drug conspiracy and related violent conduct but does not find the evidence supports the highest possible guideline calculation for conduct, some of which the defendant was acquitted. The court also finds the sentence imposed fairly reflects the §3553(a) sentencing factors.

A Judgment in accordance with the Sentencing Memorandum will issue this date.

DATED this 31st day of July, 2018.

BY THE COURT:

s/ Joseph F. Bataillon  
Senior United States District Judge